EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Víctor Roldán Flores<br><br>Apelado<br><br>v.<br><br>M. Cuebas, Inc.; Bohío International Corporation<br><br>Apelantes<br>--------------------------------<br>Ángel L. Soto Lambert<br><br>Apelado<br><br>v.<br><br>M. Cuebas, Inc.; Bohío International Corporation<br><br>Apelantes | Certiorari<br><br>2018 TSPR 18<br><br>199 _____ |

Número del Caso: AC-2015-103
                 Cons.
                 AC-2015-105

Fecha: 6 de febrero de 2018

Tribunal de Apelaciones:

        Región Judicial de Bayamón

Abogados de la parte apelante:

        Lcda. Lilliam Mendoza Toro
        Lcdo. Alfredo Fernández Martínez
        Lcda. Melissa Figueroa del Valle
        Lcda. Cassandra Voltaggio Figueroa


Abogado de la parte apelada

        Lcdo. José Ríos Rosa


Materia: Derecho Laboral y Procedimiento Civil (sentencia sumaria) – Antes de analizar la aplicación de la figura de patrono sucesor, los tribunales deben identificar las obligaciones laborales o actos ilegales del primer patrono para con el empleado reclamante; si no existe obligación laboral o acto ilegal imputable al primer patrono, no aplica la referida figura; las declaraciones juradas deben contener hechos específicos que establezcan que el declarante tiene conocimiento personal del asunto declarado.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Víctor Roldán Flores<br><br>      Apelado<br><br>           v.<br><br>M. Cuebas, Inc.; Bohío<br>International Corporation<br><br>      Apelantes<br><br>---------------------------<br><br>Ángel L. Soto Lambert<br><br>      Apelado<br><br>           v.<br><br>M. Cuebas, Inc.; Bohío<br>International Corporation<br><br>      Apelantes | AC-2015-0103<br><br>     Cons.<br><br>AC-2015-0105 |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

En San Juan, Puerto Rico, a 6 de febrero de 2018.

Comparece ante nos M. Cuebas Inc. (en adelante, M. Cuebas) y Bohío International Corporation (en adelante, Bohío), a través de los dos (2) recursos consolidados de epígrafe, y solicitan que revoquemos una Sentencia del Tribunal de Apelaciones. El foro *a quo* revocó dos (2) Sentencias Sumarias emitidas por el Tribunal de Primera Instancia, tras razonar que existían hechos en controversia en cuanto a la causa del despido de los aquí apelados y la

aplicación de las figuras de traspaso de negocio en marcha y patrono sucesor.

La presente controversia es una secuela de la Opinión emitida por este Tribunal en el caso *Meléndez González v. M. Cuebas*, 193 DPR 100 (2015). En aquella ocasión, tuvimos la oportunidad de aclarar el estándar que debe utilizar el Tribunal de Apelaciones al momento de revisar las Sentencias Sumarias dictadas por el foro primario.

Los casos consolidados que atendemos hoy nos brindan la oportunidad de delimitar el contenido de las declaraciones juradas presentadas para sostener u oponerse a una Moción de Sentencia Sumaria. Además, nos proveen la ocasión para aclarar si es necesario que los tribunales analicen la aplicación de la figura de patrono sucesor, una vez se logra demostrar la inexistencia de una obligación para con el empleado reclamante.

Previo a determinar dichas cuestiones, exponemos los hechos que dieron génesis a los casos consolidados ante nuestra consideración.

I

Durante el año 2011, los apelados Ángel L. Soto Lambert y Víctor Roldán Flores presentaron ante el Tribunal de Primera Instancia de Vega Baja y San Juan, respectivamente, sendas Querellas en contra de M. Cuebas y Bohío (en conjunto, apelantes).[1] En síntesis, adujeron que fueron empleados a

---

[1] Ambos apelados incluyeron como coquerellados adicionales a B. Fernández & Hnos. Inc., B. Fernández Holding Company y Marvel International, Inc. Sin embargo, posteriormente, los apelados solicitaron el desistimiento con perjuicio de las causas de acción en contra de dichos coquerellados, lo cual fue declarado con

tiempo indeterminado de M. Cuebas y que los despidieron injustificadamente a causa del traspaso de negocio en marcha entre M. Cuebas y Bohío.

Tras presentar sus correspondientes alegaciones responsivas en las que negaron la aplicación de las Doctrinas de Traspaso de Negocio en Marcha y Patrono Sucesor, M. Cuebas y Bohío presentaron sendas Mociones de Sentencia Sumaria en cada uno de los casos.

En sus mociones, M. Cuebas sostuvo como incontrovertidos, *inter alia*, los siguientes hechos:

1. Por espacio de alrededor de cincuenta (50) años M. Cuebas, Inc. fue una empresa que se dedicaba a la producción y distribución de especias, flanes, sofrito, galletas, habichuelas, comida para aves, entre otros, bajo las marcas "Don Goyo", "Don Toño", "Flan del Cielo", "Caramelo del Cielo", "Tweet" y "Rikas".

2. Durante el año 2010, M. Cuebas Inc. se percató de que Bohío había comenzado a elaborar sofrito. Asimismo Walmart, uno de los clientes principales de M. Cuebas, Inc., comenzó a requerir un plan de "*quality control*" que hubiese requerido una inversión millonaria como condición para continuar comprando los productos de M. Cuebas Inc.

3. Ante esta situación, M. Cuebas, Inc. decidió cerrar sus operaciones y comenzó negociaciones con Bohío con el propósito de vender ciertos activos, con el fin de capitalizar en el cierre de operaciones.

[........]

5. M. Cuebas pactó la compraventa de ciertos activos con Bohío.

6. M. Cuebas pactó esta compraventa de activos con Bohío bajo la premisa de su intención inequívoca de cerrar totalmente sus operaciones. Esto surge claramente del "Letter of Intent" donde se expresa,

---

lugar por el Tribunal de Primera Instancia. De esta forma, las causas de los apelados continuaron solamente en contra de M. Cuebas y Bohío.

entre otras cosas, "M.Cuebas' unequivocal intent to close its operations."

7. Los activos que M. Cuebas vendió a Bohío se limitaron a las siguientes marcas, recetas y maquinarias:

a. "Bohío will acquire the exclusive paid up, perpetual right to use the trademarks, patents, service marks and tradenames for the Commonwealth of Puerto Rico described in Schedule 1.1(a) hereto ("Trademarks"), as well as the exclusive distribution rights worl[d]wide of: (i) all products, sold by Seller in the present or in the past or for which it has plans in the future to sell using the tradenames "Don Goyo", "Don Toño", "Flan del Cielo", "Caramelo del Cielo", "Tweet" and "Rikas".

b. "All machinery and equipment to be acquiered by Bohío is included in Schedule 1.1(c) is free of all liens and encumbrances". Dicha Maquinaria descrita en el "Listado de Maquinarias" en el Anejo del "Asset Purchase Agreement" incluyen: Hornos UN-VU Modelo UB-16RG, Llenadora de Flanes Pinch 25, Etiquetadora de Flanes, Moledora Hobart Modelo HCM 450-2, Bomba Flanes Vaciado de Bandejas, Bomba de Flanes, Vaciado de Mezcla de Flanes y Tanque de Vainilla, Empacadora de Cruda Mainar, M[á]quinas Habichuelas, Llenadora de Sobres, M[á]quina Llenadora de Chimichurri, Balanzas de Especias, Máquina de Envasar Adobo, Selladoras de Bolsas 4x4, Impresora de Etiquetas.

8. Del "Listado de Maquinarias" las únicas que compró y se entregaron a Bohío son las maquinarias con fecha de entrega (mes y día) escrita a mano en el margen izquierdo del documento, según descritas en el inciso 7, antes mencionado.

9. Las maquinarias del "Listado de Maquinarias" que no contienen fecha en el margen izquierdo son aquellas que conservó M. Cuebas y que serán decomisadas conforme al plan de cierre total de operaciones. Estas son Compresor Kaeser, Modelo SM 11, M[á]quina Llenadora de Sofrito, Mezcladoras para Sofrito, "Shrink Tunnel" Modelo VT 16818, "Scew Conveyor" para Adobo, M[á]quina de Etiquetar Modelo R-320 y L-60, "Photo-Electric Registration Control Modelo 441".

10. Conforme al "Letter of Intent" y al "Asset Purchase Agreement", las maquinarias que no fueron entregadas a Bohío […] serán decomisadas al costo de M. Cuebas.

11. Otros equipos que formaban parte del negocio de M. Cuebas, que no fueron vendid[o]s a Bohío y que no están contemplad[o]s en el "Asset Purchase Agreement", incluyen pero no están limitados a anaqueles, "fingers" (vehículo de motor para mover productos de los anaqueles), contratos de alquiler de almacenes tanto de Mayagüez como de Guaynabo, flota de vehículos de motor que incluyen cuatro (4) unidades refrigeradas y cinco (5) "vanes", equipo de oficina tales como escritorios, archivos, sillas, impresoras, teléfonos, faxes, computadoras, otras maquinarias, materiales, etc. Estas propiedades han sido puestas y/o serán puestas a la venta al mejor postor y/o serán desechados por M. Cuebas. Tales ventas beneficiarán los haberes de M. Cuebas y no son parte del contrato de compraventa de activos pactado con Bohío.

[……..]

13. M. Cuebas ha vendido seis (6) vehículos de motor. Dichos vehículos de motor no fueron vendidos a Bohío.

14. El almacén que ocupaba M. Cuebas sito en Guaynabo, Puerto Rico se encuentra desocupado, junto a sus oficinas, mientras finalizan los procesos del cierre total de operaciones.

15. Asimismo, M. Cuebas, Inc., tenía arrendado un almacén en Mayagüez, Puerto Rico. Bohío nunca ocupó ni adquirió el almacén y/o el contrato de arrendamiento del almacén donde M. Cuebas operaba su negocio ni en Guaynabo ni en Mayagüez.

16. Bohío expresamente no adquirió las contingencias, deudas, etc. de M. Cuebas. Bohío no adquirió acciones, ni los empleados de M. Cuebas y expresamente se acordó que Bohío no sería una corporación sucesora o patrono sucesor de M. Cuebas.

17. M. Cuebas asumió exclusivamente todo el proceso del cierre de operaciones, incluyendo gestiones como procurar cuentas por cobrar, liquidación de pagos de licencias y salarios a sus empleados y pago de sus deudas.

[……..]

20. Para finales del mes de julio, principios del mes de agosto de 2011, M. Cuebas ya no elaboraba productos en su empresa.

21. Previo a la compraventa de activos pactada entre M. Cuebas y Bohío, este último se dedicaba a la manufactura de comestibles, incluyendo adobos, sofritos, especias, habichuelas, entre otros. Por tanto, Bohío contaba con sus propios medios de producción, empleados, planta de operaciones, maquinaria, equipos, materiales y demás para producir sus productos.

22. Luego de la compraventa de activos pactada entre M. Cuebas y Bohío, este último fabrica los productos adquiridos de M. Cuebas con su propia maquinaria, utilizando sus propios medios de producción, empleados, planta de operaciones, maquinaria, equipos, materiales y demás para producir sus productos.

23. Bohío puede utilizar cierta maquinaria o equipos adquiridos de M. Cuebas para la producción de sus productos, pero la mayoría de la maquinaria adquirida no forma parte de su línea de producción.

24. Bohío utiliza su prerrogativa corporativa para decidir qué hacer con sus productos y de esta forma ha decidido no producir el "adobo mágico", dejar de producir las habichuelas "Rikas", no producir el chimichurri, entre otros. […]. Por tanto, al día de hoy no se producen los mismos productos que producía M. Cuebas previo al cierre total de sus operaciones.

[………]

26. El 8 de abril de 2011, M. Cuebas anunció a sus empleados el cierre total de operaciones y que dicho cierre sería llevado a cabo por etapas. El Querellante recibió dicha notificación de cierre […].

27. Efectivo el 29 de abril de 2011, comenzó el cierre de operaciones con el despido de todos los vendedores.

[………]

29. En octubre de 2011, se concluyó el despido de la totalidad de los empleados de M. Cuebas.

[………]

[…] El Querellante no participó en la preparación y/o negociación de la compraventa de activos, por lo cual no tiene conocimiento personal en cuanto a dicho negocio, como lo son la carta de intención de compraventa de activos con fecha de 28 de marzo de 2011, ("Letter of Intent" […]) y el contrato de compraventa de activos ("Asset Purchase Agreement", […]).

34. Bohío nunca empleó al Querellante […] ni a la fuerza trabajadora de M. Cuebas, Inc. Bohío nunca ha impartido instrucciones en M. Cuebas, ni ha dirigido a sus empleados.

35. M. Cuebas, Inc. cumplió con sus obligaciones con el Querellante […] como lo fue el pago de sus salarios, licencia por vacaciones y bono de Navidad. Bohío nunca ha empleado al Querellante ni ha hecho pago alguno por concepto relacionado al empleo del Querellante.

36. El nombre de M. Cuebas no fue adquirido por Bohío. Este sigue perteneciendo a sus dueños. Bohío fabrica sus productos bajo su propio nombre y marca.[2]

Para sustentar lo anterior, M. Cuebas presentó amplia prueba documental, a saber: una Declaración Jurada de su presidenta, Sra. Marta Cuebas, la Carta de Intención y el Contrato de Compraventa suscritos por M. Cuebas y Bohío, el documento mediante el cual M. Cuebas anunció a sus empleados el cierre total de sus operaciones, las transcripciones de las deposiciones tomadas a los apelados y las contestaciones juradas de Bohío y M. Cuebas a los interrogatorios y requerimientos de admisiones cursados por los apelados.

M. Cuebas indicó que de los hechos materiales incontrovertidos surgía que los despidos de los apelados

---

[2] Se aclara que los hechos en los que se hace referencia a un solo apelado-querellante, fueron esbozados tanto en la Moción de Sentencia Sumaria presentada en el caso del apelado Víctor Roldán Flores, como la presentada en el caso del apelado Ángel L. Soto Lambert.

fueron a causa del cierre de operaciones, que Bohío no compró la totalidad del negocio, sino ciertos activos, que no hubo un traspaso de negocio en marcha y que no era de aplicación la Doctrina de Patrono Sucesor. Así, solicitó la desestimación de las reclamaciones en su contra.

Por su parte, Bohío adoptó por referencia la relación de hechos incontrovertidos presentada por M. Cuebas, así como su análisis normativo. En apoyo de su solicitud, presentó una Declaración Jurada del presidente de Bohío, Sr. Marcelo Tortoriello.

Los apelados se opusieron a las Solicitudes de Sentencia Sumaria. Con el propósito de controvertir la mayoría de los hechos esbozados por los apelantes en sus correspondientes solicitudes, se limitaron a cuestionar el conocimiento personal de la Sra. Marta Cuebas y del Sr. Marcelo Tortoriello e impugnaron sus Declaraciones Juradas, tras razonar que solo contenían conclusiones, sin hechos específicos. Por otro lado, presentaron un listado de las marcas que Bohío compró a M. Cuebas y una Declaración Jurada del Sr. Carlos Iván Meléndez González, en la que este afirmó, en esencia, que fue empleado de M. Cuebas hasta el 4 de agosto de 2011, que desde el 8 de agosto de 2011 -y antes de la compraventa de activos- comenzó a ser empleado de Bohío y que Bohío estaba usando la maquinaria que le compró a M. Cuebas para la producción de varios de los productos que también le compró a M. Cuebas.

Así las cosas, el Tribunal de Primera Instancia emitió una Sentencia Sumaria en cada pleito y desestimó las reclamaciones de ambos apelados. Razonó que de los hechos probados por los apelantes surgía que no se configuró un traspaso de un negocio en marcha, que M. Cuebas descontinuó sus operaciones, por lo que los despidos estuvieron justificados y que no aplicaba la Doctrina de Patrono Sucesor. Determinó que los apelados no lograron refutar adecuadamente los hechos esbozados por los apelantes. Específicamente, destacó que la Declaración Jurada del Sr. Carlos Iván Meléndez González fue insuficiente para controvertir los hechos materiales del caso.

Inconformes, los apelados recurrieron ante el Tribunal de Apelaciones. Dicho foro consolidó los casos y emitió una Sentencia en la que revocó las Sentencias emitidas por el foro primario, tras entender que existían hechos materiales en controversia y ciertos elementos de intención que ameritaban ser dirimidos en una Vista en su Fondo.

En desacuerdo, tanto Bohío como M. Cuebas recurrieron ante este Tribunal mediante sendos recursos de apelación. Dichos recursos fueron consolidados con otros dos (2) presentados también por Bohío y M. Cuebas con el propósito de impugnar la Sentencia emitida por el Tribunal de Apelaciones en el caso *Meléndez González, et als. v. M. Cuebas, Inc.*, Núm. KLAN201300130. Mediante esta, el foro *a quo* revocó varias Sentencias Sumarias, en las que el Tribunal

de Primera Instancia desestimó las reclamaciones por despido injustificado de otros cuatro (4) ex empleados de M. Cuebas.

Así las cosas, emitimos una Opinión en la que revocamos las Sentencias recurridas, tras razonar que el Tribunal de Apelaciones erró en su revisión de las Sentencias Sumarias dictadas por el foro primario. Además, devolvimos los casos a los correspondientes Paneles del Tribunal de Apelaciones para que resolvieran de conformidad con el nuevo estándar de revisión establecido. Véase *Meléndez González v. M. Cuebas*, supra.

Tras la correspondiente devolución de los casos, el Tribunal de Apelaciones emitió nuevamente dos (2) Sentencias. En el caso *Meléndez González, et als. v. M. Cuebas, Inc.*, Núm. KLAN201300130, se retractó de su determinación anterior y confirmó la desestimación sumaria de las reclamaciones presentadas por los otros cuatro (4) ex empleados de M. Cuebas, por entender que no existían hechos medulares en controversia.

Sin embargo, en el caso ante nos, el Tribunal de Apelaciones sostuvo su decisión previa de revocar la Sentencia emitida. Razonó que existía controversia sobre lo siguiente:

1. Si M. Cuebas hizo un traspaso de negocio en marcha.

2. Si Bohío se convirtió en patrono sucesor de los apelantes:

a. Si existe continuidad y similitud en las operaciones de Bohío de los activos de M. Cuebas.

b. Si existe una continuación sustancial de la misma actividad de negocios.

c. Si Bohío utiliza el mismo equipo de M. Cuebas y la misma maquinaria y emplea los mismos métodos de producción.

d. Si Bohío produce los mismos productos y presta los mismos servicios que M. Cuebas.

e. Cómo fue la operación del negocio durante el período de transición.[3]

Concluyó que el análisis en cuanto a la aplicación de la figura de Patrono Sucesor "de por sí impedía que el foro de instancia adjudicara sumariamente el caso" y "no [podía] ser producto de un mero examen de documentos".[4]

No conformes con dicha determinación, M. Cuebas y Bohío comparecen ante nos mediante sendos recursos de apelación.[5] En esencia, ambos señalan que erró el Tribunal de Apelaciones al no aplicar el estándar de revisión ordenado por este Tribunal en *Meléndez González v. M. Cuebas*, supra, y al entender que existían hechos en controversia que impedían la resolución sumaria de los casos. Destacan que lo que el Tribunal de Apelaciones entendió que estaba en controversia, no fueron hechos, sino asuntos de derecho. Afirman que el *foro a quo* debió resolver dichos asuntos a la luz de los hechos materiales probados.

Por otra parte, para justificar que atendamos los recursos como apelaciones, presentaron ocho (8) Sentencias

---

[3] Véase Sentencia del Tribunal de Apelaciones emitida el 15 de septiembre de 2015, Apéndice del Recurso AC-2015-103, pág. 1301.

[4] *Id.*, págs. 1309-1310.

[5] M. Cuebas presentó el recurso AC-2015-103 y Bohío presentó el recurso AC-2015-105.

emitidas por distintos Paneles del Tribunal de Apelaciones que son inconsistentes con la que aquí se apela. Dichos Paneles tuvieron ante sí esencialmente idénticas alegaciones, hechos y documentos, y razonaron: que M. Cuebas cerró sus operaciones, por lo que los despidos fueron justificados, que la compraventa de ciertos activos entre M. Cuebas y Bohío no constituyó el traspaso de un negocio en marcha y que no era de aplicación la Doctrina de Patrono Sucesor.[6]

En virtud del conflicto entre las Sentencias del foro *a quo*, acogemos los recursos como apelaciones y contando con

---

[6] Las referidas Sentencias fueron emitidas en los siguientes casos: 1) *Martínez Meléndez v. M. Cuebas Inc., et als.*, Núm. KLAN201202035 (Sentencia de 21 de marzo de 2013); 2) *Pérez Beltrán v. M. Cuebas Inc., et als.*, Núm. KLAN201300255 (Sentencia de 27 de junio de 2013); 3) *Ginés Rivera v. M. Cuebas Inc., et als.*, Núm. KLCE201300236 (Sentencia de 5 de abril de 2013); 4) *Rosado Rondón v. M. Cuebas Inc., et als.*, Núm. KLAN201300410 (Sentencia de 26 de junio de 2013); 5) *González Santiago v. M. Cuebas Inc., et als.*, Núm. KLAN20130541 (Sentencia de 26 de junio de 2013); 6) *Meléndez Martínez v. M. Cuebas Inc., et als.*, Núm. KLAN201400039 (Sentencia de 20 de febrero de 2014); 7) *Carrasquillo Guzmán v. M. Cuebas*, Inc., Núm. KLAN201400322 (Sentencia de 30 de abril de 2014); y 8) *Meléndez González, et als. v. M. Cuebas, Inc., Núm.* KLAN201300130 (Sentencia de 20 de agosto de 2015). Destacamos que todas las Sentencias emitidas en los casos mencionados advinieron finales y firmes. Específicamente, las dictadas en los primeros cinco (5) casos fueron impugnadas ante este Tribunal mediante recursos de apelación que fueron denegados: 1) *Martínez Meléndez v. M. Cuebas Inc., et als.*, Núm. AC-2013-0035, denegado mediante Resoluciones emitidas el 17 de mayo de 2013, el 4 de octubre de 2013 (Primera Moción de Reconsideración) y el 15 de noviembre de 2013 (Segunda Moción de Reconsideración); 2) *Pérez Beltrán v. M. Cuebas Inc., et als.*, Núm. AC-2013-0071, denegado mediante Resoluciones emitidas el 22 de noviembre de 2013, el 31 de enero de 2014 (Primera Moción de Reconsideración) y el 28 de marzo de 2014 (Segunda Moción de Reconsideración); 3) *Ginés Rivera v. M. Cuebas Inc., et als.*, Núm. AC-2013-0036, denegado mediante Resoluciones emitidas el 17 de mayo de 2013, el 19 de julio de 2013 (Primera Moción de Reconsideración) y el 8 de noviembre de 2013 (Segunda Moción de Reconsideración); 4) *Rosado Rondón v. M. Cuebas Inc., et als.*, Núm. AC-2013-0077, denegado mediante Resoluciones emitidas el 6 de diciembre de 2013, el 7 de febrero de 2014 (Primera Moción de Reconsideración) y el 21 de marzo de 2014 (Segunda Moción de Reconsideración); 5) *González Santiago v. M. Cuebas Inc., et als.*, Núm. AC-2013-0075, denegado mediante Resoluciones emitidas el 6 de diciembre de 2013, el 7 de febrero de 2014 (Primera Moción de Reconsideración) y el 21 de marzo de 2014 (Segunda Moción de Reconsideración).

el beneficio de la comparecencia de todas las partes, resolvemos.

II

A

La controversia ante nuestra consideración requiere que examinemos nuevamente el mecanismo procesal de la sentencia sumaria dispuesto en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V.

Como es sabido, el propósito de dicho mecanismo es proveer una solución justa, rápida y económica para aquellos litigios de naturaleza civil en los que no existe una controversia genuina en torno a los hechos materiales que componen la causa de acción que se contempla. *Rodríguez Méndez v. Laser Eye*, 195 DPR 769, 785 (2016); *Oriental Bank v. Perapi*, 192 DPR 7, 25 (2014).

Conforme a la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, procede dictar sentencia sumaria si las alegaciones, deposiciones, y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material y además, si el derecho aplicable así lo justifica. *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 225 (2015); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Consecuentemente, se permite disponer de asuntos sin necesidad de celebrar un juicio, ya que únicamente resta aplicar el derecho a los hechos no controvertidos. *Id.*

La parte promovente de la moción de sentencia sumaria viene obligada a desglosar los hechos sobre los que aduce que no existe controversia y, para cada uno, especificar la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya. Regla 36.3 de Procedimiento Civil, *supra*; *Zapata-Rivera v. J.F. Montalvo,* supra, pág. 432.

Por otro lado, la parte que se opone tiene el deber de hacer referencia a los párrafos enumerados por la parte promovente que entiende que están en controversia y para cada uno, detallar la evidencia admisible que sostiene su impugnación. *Id*. Es decir, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones. *Rodríguez Méndez v. Laser Eye,* supra; *Ramos Pérez v. Univision*, 178 DPR 200, 215-216 (2010). Las meras afirmaciones no bastan. *Id*. "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente". *Ramos Pérez v. Univision*, supra, pág. 215.

Si el oponente no controvierte los hechos propuestos de la forma en la que lo exige la Regla 36.3 de Procedimiento Civil, *supra*, se podrán considerar como admitidos y se dictará la sentencia sumaria en su contra, si procede. Regla 36.3 de Procedimiento Civil, *supra*.

i.   *Declaraciones juradas*

La Regla 36.5 de Procedimiento Civil, 32 LPRA Ap. V, establece, en lo pertinente, lo siguiente:

> Las declaraciones juradas para sostener u oponerse a la moción se basarán en el conocimiento personal del(de la) declarante. Contendrán aquellos hechos que serían admisibles en evidencia y demostrarán afirmativamente que el(la) declarante está cualificado(a) para testificar en cuanto a su contenido.

Al interpretar dicha Regla, hemos resuelto que "las declaraciones juradas que contienen sólo conclusiones, sin hechos específicos que las apoyen, no tienen valor probatorio, siendo, por lo tanto, insuficientes para demostrar la existencia de lo que allí se concluye". *Ramos Pérez v. Univision,* supra, pág. 216. Véase también: *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 722 (1986). Es decir, que para que una declaración jurada sea suficiente para sostener o controvertir una moción de sentencia sumaria tiene que contener hechos específicos.

Ahora bien, la declaración, para ser suficiente, no solo debe contener hechos sobre los aspectos sustantivos del caso, sino que deben incluirse hechos que establezcan que el declarante tiene conocimiento personal del asunto declarado. En cuanto al particular, el tratadista James Moore comenta correctamente lo siguiente:

> An affidavit or declaration used to support or oppose a motion for summary judgment must be made on personal knowledge. If the affiant or declarant could not have perceived or observed what he or she testified to, he or she could not have personal

knowledge. In that event, **the court will not consider the affidavit or declaration.**

**The affidavit or declaration must state facts that show personal knowledge of the substantive facts in the affidavit or declaration.** For example, a witness in a traffic accident case might preface her testimony about the color of a traffic signal by stating, "I was a passenger in Joe Brown´s car on September 12 at 4:00p.m. I was sitting in the front seat, with nothing obstructing my view out the front windshield. I was looking at the traffic signal as we approached and entered the intersection." Having established the basis for personal knowledge, the witness could then state, "The signal was green as we entered the intersection".

Sometimes personal knowledge may be inferred from the content or context of the affidavit. For example, family members are presumed to have personal knowledge of a family member´s possession of land. **Similarly, corporate officers are presumed to have personal knowledge of acts of their corporation.** Likewise, employees who are familiar with the record-keeping practices of a business are qualified to speak from personal knowledge that particular documents are admissible business records, and affidavits sworn by such employees constitute appropriate summary judgment evidence even if they were not employed at the time the record was created. **If personal knowledge is to be inferred, the basis for the inference must be contained in the affidavit or declaration.** *11 Moore's Federal Practice 3d,* Sec. 56.94 [2] [b], págs. 56-218 a 56-222 (2017). (Énfasis suplido).

Véanse también: *Nieves-Luciano v. Hernández-Torres*, 397 F.3d 1, 5 (1er Cir. 2005) y *Jain v. CVS Pharmacy, Inc.*, 779 F.3d 753, 758 (8vo Cir. 2015) (en dichos casos, se confirmaron las determinaciones de los tribunales de distrito de considerar inadmisibles unas declaraciones juradas que no contenían hechos que establecieran que los

declarantes tenían conocimiento personal de los hechos declarados).

De conformidad, el tribunal no puede considerar ni atribuirle valor probatorio a una declaración jurada de la cual no surja que el declarante tiene conocimiento personal sobre lo que declara.

ii. *Estándar de revisión*

Recientemente, en *Meléndez González v. M. Cuebas*, supra, nos expresamos en cuanto al proceso de revisión de las sentencias sumarias y establecimos que en dicho proceso el Tribunal de Apelaciones debe: 1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; 2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; 3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos; 4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

En cuanto a la identificación de las controversias de hecho y de derecho, hemos llamado la atención a lo siguiente:

Aunque a veces no es fácil atisbar la diferencia, es vital que los tribunales distingan puntualmente entre lo que es un hecho y una conclusión de derecho. Un "hecho" en el campo jurídico es un acontecimiento o un comportamiento determinado y pertinente para la norma legal que se pretende aplicar. La norma jurídica se aplica al supuesto que constituye el "hecho" para arribar a determinada conclusión de derecho.

[........]

En todo caso debidamente instado ante un foro judicial **habrá siempre una controversia de derecho presente y es precisamente esa controversia la que vienen los tribunales llamados a resolver**. Si se comete el error de catalogar las controversias de derecho como controversias de hecho se eliminaría virtualmente el mecanismo de sentencia sumaria de nuestro ordenamiento procesal, pues este requiere expresamente la inexistencia de una controversia de hechos materiales para que un tribunal pueda dictar sentencia de esa forma. *Lugo Montalvo v. Sol Meliá Vacation*, supra, págs. 226-227. (Énfasis suplido y citas omitidas).

B

El Artículo 2 de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185b, establece las causas que se considerarán justificadas para el despido. Allí se reconoce que pueden surgir circunstancias en la operación de los negocios que requieran cesantear la empleomanía sin que ello necesariamente contravenga las disposiciones de la Ley Núm. 80. *Zapata-Rivera v. J.F. Montalvo,* supra, pág. 425. Entre dichas circunstancias, se encuentra "el cierre total, temporero o parcial de las operaciones del establecimiento". Artículo 2 de la Ley Núm. 80, *supra*.

En caso de un cierre total y permanente de un establecimiento, el patrono **no está obligado a cumplir con disposición legal alguna bajo la Ley Núm. 80,** *supra*, ya que al cerrar no retiene ni reemplea trabajador alguno. Véase Departamento del Trabajo y Recursos Humanos, *Guía revisada para la interpretación y aplicación de la Ley Núm. 80 de 30 de mayo de 1976,* 2014, pág. 56.

*i.   Traspaso de negocio en marcha*

La figura del traspaso de negocio en marcha es una distinta a la de patrono sucesor y está regulada por el Artículo 6 de la Ley Núm. 80, 29 LPRA sec. 185f. Este dispone lo siguiente:

> En el caso del traspaso de un negocio en marcha, si el nuevo adquirente continúa utilizando los servicios de los empleados que estaban trabajando con el anterior dueño, se les acreditará a éstos el tiempo que lleven trabajando en el negocio bajo anteriores dueños. En caso de que el nuevo adquirente opte por no continuar con los servicios de todos o algunos de los empleados y no advenga en su consecuencia patrono de éstos el anterior patrono responderá por la indemnización provista por las secs. 185a a 185m de este título el comprador deberá retener la cantidad correspondiente del precio de venta convenido respecto al negocio. En caso de que los despida sin justa causa después del traspaso, el nuevo dueño responderá por cualquier beneficio que bajo las secs. 185a a 185m de este título pueda tener el empleado que quede cesante, estableciéndose además un gravamen sobre el negocio vendido para responder del monto de la reclamación. *Id*.

Se ha definido el "negocio en marcha" como "aquel que **se mantiene operando de forma continua y con la expectativa de seguir funcionando indefinidamente**". *Adventist Health v.*

*Mercado*, 171 DPR 255, 266, esc. 5 (2007) (Énfasis suplido).

Véase también: GOING CONCERN, Black's Law Dictionary, 10ma

ed., Thomson Reuters, 2014. ("A commercial enterprise

actively engaging in business with the expectation of

indefinite continuance").[7]

*ii. Patrono Sucesor*

La Doctrina del Patrono Sucesor procede del derecho

común estadounidense y se incorporó formalmente a nuestro

ordenamiento hace casi cinco décadas mediante el caso *J.R.T.*

*v. Coop. Azucarera*, 98 DPR 314 (1970). Esta Doctrina aplica

cuando hay una venta o transferencia de activos o

reorganización de un negocio, siempre que haya una

similaridad sustancial en la operación y continuidad en la

identidad de la empresa, antes y después del cambio.

*Adventist Health v. Mercado,* supra*, págs*. 266-267*; Rodríguez*

*v. Urban Brands*, 167 DPR 509, 515-516 (2006); *Piñeiro v.*

---

[7] Señalamos que la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a *et seq*. (2009), vigente a la fecha de los hechos, no contenía una definición de "traspaso de negocio en marcha". Sin embargo, la Ley Núm. 4-2017, conocida como Ley de Transformación y Flexibilidad Laboral, añadió un nuevo Artículo 14 a la Ley Núm. 80, *supra*, para incorporar una serie de definiciones, entre ellas, el "traspaso de un negocio en marcha" y lo define como

> aquella compraventa de una empresa o negocio, mediante la cual un patrono vende a otro patrono una parte sustancial de los activos y/o pasivos del negocio, sin interrupción o cese en las operaciones del mismo por más de seis (6) meses y se continúa operando el mismo tipo de negocio en el mismo establecimiento, o en uno distinto, con básicamente el mismo equipo, maquinaria e inventario, produciendo básicamente los mismos productos y/o prestando los mismos servicios, reteniendo el mismo nombre del negocio y marcas comerciales o un nombre similar, siempre y cuando la mayoría de los empleados que laboran en el negocio en cualquier momento durante los seis (6) meses siguientes al traspaso trabajaban para el patrono vendedor al ocurrir el traspaso del negocio.

*Int'l Air Serv. of P.R., Inc.,* 140 DPR 343, 349-350 (1996). Para determinar la existencia de dicha similaridad y continuidad, hemos resuelto que se deben considerar los siguientes factores:

(1) la existencia de una continuación sustancial de la misma actividad de negocios;

(2) la utilización de la misma planta para las operaciones;

(3) el empleo de la misma o sustancialmente la misma fuerza obrera;

(4) la conservación del mismo personal de supervisión;

(5) la utilización del mismo equipo y maquinaria, y el empleo de los mismos métodos de producción;

(6) la producción de los mismos productos y la prestación de los mismos servicios;

(7) la retención del mismo nombre; y

(8) la operación del negocio durante el período de transición. *Adventist Health v. Mercado*, supra, pág. 267; *Piñeiro v. Int'l Air Serv. of P.R., Inc.,* supra, pág. 350; *J.R.T. v. Coop. Azucarera*, supra, págs. 323-24.

Ahora bien, es necesario enfatizar que el único propósito de la referida Doctrina es hacer responsable al nuevo patrono **por las obligaciones laborales o actos ilegales del patrono anterior.** *Shaffer v. Mitchell Transport, Inc.,* 635 F.2d 261, 265-266 (3er Cir. 1980) ("The Supreme Court has created the successorship doctrine under

which a court may impose on a successor employer certain legal obligations of its predecessor").[8]

Por ello, la pregunta de umbral debe ser: ¿Cuál es la obligación laboral o acto ilegal, imputable al primer patrono, por la que o el que sería responsable el segundo patrono? *Howard Johnson Co. Inc. v. Detroit Local Joint Executive Bd.*, 417 US 249, 262, n. 9 (1974) ("The real question in each of these 'successorship' cases is, on the particular facts, what are the legal obligations of the new employer to the employees of the former owner or their representative?").

En ese sentido, los tribunales deben primero identificar la existencia de una obligación laboral o un acto ilegal imputable al patrono anterior. Una vez establecido lo anterior, podrán pasar a examinar si aplica la Doctrina de Patrono Sucesor. **Nunca antes.**

En otras palabras, si el patrono anterior no cometió algún acto ilegal ni contrajo alguna obligación con el empleado reclamante, no es necesario considerar la existencia de los factores para la aplicación de la referida Doctrina.

---

[8] Véase también, *Adventist Health v. Mercado*, 171 DPR 255, 266 (2007) ("Conforme a [e]sta [doctrina] […], se estima que el nuevo patrono asumirá las obligaciones pertinentes contraídas por el [patrono] anterior"); *Rodríguez v. Urban Brands*, 167 DPR 509, 515 (2006) ("Cuando la referida doctrina aplica, se entiende que un patrono que sustituye a otro […] asume las obligaciones que contrajo el anterior"); *J.R.T. v. Asoc. C. Playa Azul I*, 117 DPR 20, 28, n. 6 (1986) ("la nueva entidad […], al amparo de la doctrina de patrono sucesor (successorship) se puede hacer responsable de las obligaciones laborales de su predecesora").

Ello ha sido el curso que este Tribunal ha seguido en el pasado. Hemos aplicado la referida Doctrina para hacer valer los términos de un Convenio Colectivo, *J.R.T. v. Coop. Azucarera*, supra, *Beaunit of Puerto Rico v. J.R.T.*, 93 DPR 509 (1966); para imponer responsabilidad a un patrono sucesor por despidos discriminatorios realizados por el predecesor, *Rodríguez v. Urban Brands*, supra*, Bruno López v. Motorplan, Inc.*, 134 DPR 111 (1993); y para imponer responsabilidad al nuevo adquirente de un negocio por despidos injustificados cometidos por el patrono anterior, *Rodríguez v. Urban Brands*, supra*; Piñeiro v. Int'l Air Serv. of P.R., Inc.,* supra. En todos esos casos, antes de proceder a aplicar la Doctrina, se ha identificado el acto ilegal o la obligación imputable al primer patrono.

Así las cosas, y en el contexto de una reclamación por despido injustificado, resolvemos que, si se logra demostrar que el despido que realizó el patrono anterior fue justificado, el análisis de la Doctrina de Patrono Sucesor resulta innecesario. Ello, pues no existe un acto ilegal por el que deba responder el nuevo patrono.

Evaluado el marco jurídico pertinente, nos toca aplicar el Derecho a los hechos ante nuestra consideración.

III

A

Primero, nos corresponde determinar si el Tribunal de Apelaciones aplicó correctamente el estándar de revisión de

Mociones de Sentencia Sumaria, según aclarado en *Meléndez González v. M. Cuebas*, supra. Respondemos en la negativa.

Como primer paso en su análisis, el Tribunal de Apelaciones debía revisar que tanto las Mociones de Sentencia Sumaria de los apelantes como las correspondientes oposiciones de los apelados cumplieran con los requisitos de forma establecidos en la Regla 36 de Procedimiento Civil, *supra*. No lo hizo. Al menos, no correctamente. Por tanto, a continuación, hacemos lo propio.

Las Mociones de Sentencia Sumaria presentadas por M. Cuebas y Bohío cumplieron con todas las formalidades de la mencionada Regla 36, *supra*. Entre las formalidades más importantes, cumplieron con desglosar los hechos sobre los que entendían que no existía controversia en párrafos separados y los sustentaron con prueba admisible en evidencia.

Entre dicha prueba, se encuentra la Declaración Jurada de la presidenta de M. Cuebas, Sra. Marta Cuebas. Para que dicha declaración fuera suficiente para sustentar la solicitud de Sentencia Sumaria, la señora Cuebas tenía que incluir hechos, no solo sobre los aspectos sustantivos del caso, sino unos que establecieran que tenía conocimiento personal de lo declarado. Véase Regla 36.5 de Procedimiento Civil, *supra*, y 11 *Moore's Federal Practice 3d*, op. cit. Así fue. Aunque su conocimiento personal podía ser inferido dado el cargo que ocupa en la compañía, la declaración incluyó hechos que demostraron que tenía conocimiento sobre

lo que declaró, a saber, que fue ella quien hizo los acercamientos para negociar la compraventa de activos. Además, incluyó hechos específicos, y no conclusiones, sobre los aspectos sustantivos de la operación de M. Cuebas, el cierre de operaciones, los despidos y la compraventa de activos.

Por otra parte, también se presentó la Declaración Jurada del presidente de Bohío, Sr. Marcelo Tortoriello, la cual también es suficiente, pues su conocimiento se puede inferir de su cargo, véase *11 Moore's Federal Practice 3d,* op. cit., y, además, incluyó hechos específicos sobre la operación de Bohío tras la compraventa de ciertos activos de M. Cuebas.

Las Declaraciones Juradas mencionadas, junto a la Carta de Intención, el Contrato de Compraventa de Activos, el documento mediante el cual M. Cuebas anunció a sus empleados el cierre total de sus operaciones y las transcripciones de las deposiciones tomadas a los apelados, así como la otra prueba documental presentada, fueron suficientes para demostrar todos y cada uno de los hechos que se incluyeron en las Mociones de Sentencia Sumaria.

*A contrario sensu*, ello no fue el caso de los apelados. Aunque en sus correspondientes oposiciones negaron la mayoría de los hechos propuestos por los apelantes, no lo hicieron con evidencia sustancial. Para refutar los hechos que los apelantes sostuvieron con las Declaraciones Juradas de los presidentes de ambas empresas, los apelados se

limitaron a impugnar, sin fundamento válido alguno, el conocimiento personal de estos.

Por otro lado, para controvertir los hechos propuestos por los apelantes relacionados al uso de las maquinarias y la producción de los productos comprados a M. Cuebas, los apelados presentaron dos (2) documentos.

El primero consistía en un listado de los productos comprados por Bohío a M. Cuebas, que en nada contradecía lo aseverado por los apelantes, toda vez que estos admitieron la compra de dichos productos.

El segundo documento fue la Declaración Jurada del Sr. Carlos Iván Meléndez González. El foro primario entendió que esta era insuficiente. Coincidimos. Primero, salvo afirmar que desde el 8 de agosto de 2011 trabajaba para Bohío, el señor Meléndez González no incluyó hechos específicos que demostraran que estaba cualificado y que tenía el conocimiento personal para declarar sobre las maquinarias utilizadas y los productos vendidos a Bohío, luego de la compraventa de activos. Su conocimiento personal no se puede inferir del solo hecho que trabajaba en Bohío. Para establecer dicho conocimiento, como mínimo, debía expresar el puesto que ocupaba en dicha empresa. No lo hizo. Por tanto, su declaración no tiene valor probatorio alguno. *11 Moore's Federal Practice 3d,* op. cit.

Además, muchos de los asuntos incluidos en dicha Declaración Jurada son conclusiones y no hechos. Por ejemplo, afirmar que "los medios de producción que utiliza

Bohío son para todos los efectos los mismos que utilizaba M. Cuebas, a decir, la maquinaria y recetas", sin establecer cuáles específicamente eran esas maquinarias y recetas, es una conclusión insuficiente para refutar un hecho debidamente evidenciado.

En conclusión, los apelados no lograron refutar ninguno de los hechos debidamente sustentados por los apelantes en sus Mociones de Sentencia Sumaria. Por tanto, al amparo de la Regla 36.3 de Procedimiento Civil, *supra*, estos debían darse por admitidos. *Zapata-Rivera v. J.F. Montalvo,* supra, pág. 455; *Ramos Pérez v. Univision,* supra, pág. 221.

Como segundo paso de su análisis, el Tribunal de Apelaciones debía revisar si en realidad existían hechos materiales en controversia y, de haberlos, exponer concretamente cuáles hechos materiales encontró que estaban en controversia y cuáles estaban incontrovertidos. Ahora bien, aunque dicho Foro hizo unas determinaciones a esos efectos, entendemos que no fueron acertadas.

Destacamos que, entre dichas determinaciones, estableció como controversia de hecho "si M. Cuebas hizo un traspaso de negocio en marcha". Esa controversia, sin lugar a dudas, era de derecho y no de hecho, por lo que el *foro a quo* venía llamado a resolverla al amparo de los hechos no controvertidos. Véase *Lugo Montalvo v. Sol Meliá Vacation*, supra, págs. 226-227.

Ciertamente, los apelantes presentaron prueba documental sustancial para sostener todos los hechos

materiales del caso. Por tanto, al Tribunal de Apelaciones, como último paso de su análisis, solo le correspondía aplicar el derecho. Una aplicación correcta del derecho lleva a la innegable conclusión de que procedía desestimar las Querellas de los apelados, por lo que dicho Tribunal erró al concluir que era necesaria la celebración de un juicio. Veamos.

B

La prueba documental presentada por los apelantes demostró inequívocamente los hechos materiales que detalláremos en los párrafos a continuación.

Durante el 2010, M. Cuebas decidió cerrar sus operaciones y comenzó negociaciones con Bohío, con el propósito de vender ciertos activos y capitalizar en el cierre de operaciones.[9] El 1 de abril de 2011, M. Cuebas y Bohío suscribieron una Carta de Intención, en la que se indicó que se estaba negociando la venta de ciertos activos **a causa de la decisión inequívoca de M. Cuebas de cerrar sus operaciones** ("upon Seller´s unequivocal decision to close its operations").[10]

El 8 de abril de 2011, M. Cuebas notificó a todos los empleados, mediante una carta que recibieron ambos apelados,

---

[9] Véase, Declaración Jurada de la Sra. Marta Cuebas, Apéndice del Recurso AC-2015-103, págs. 351 y 727.

[10] Véase, *Letter of Intent*, Apéndice del Recurso AC-2015-103, págs. 355-361 y 731-737.

que cerraría totalmente sus operaciones.[11] El mismo día, M. Cuebas convocó una reunión en la que les explicó a sus empleados que cerraría sus operaciones, por etapas, pero totalmente.[12] A dicha reunión, asistió el apelado Ángel L. Soto, pero no el apelado Víctor Roldán, pues tuvo que salir de la planta a atender una emergencia.[13]

El 29 de abril de 2011, M. Cuebas comenzó el cierre de operaciones con el despido de todos los vendedores.[14] El apelado Soto, quien era vendedor, fue despedido el 29 de abril de 2011.[15] El 18 de agosto de 2011, M. Cuebas y Bohío suscribieron un contrato ("*Asset Purchase Agreement*"), mediante el que M. Cuebas le vendió unas marcas y ciertas máquinas a Bohío.[16] A través del referido Contrato, Bohío negó haber adquirido las contingencias, deudas, acciones y empleados de M. Cuebas, así como cualquier otro activo que no estuviera detallado en el Contrato.[17] Bohío no contrató a

---

[11] Véase, Carta de notificación de cierre y transcripciones de las deposiciones de los apelados, Apéndice del Recurso AC-2015-103, págs. 405, 415-416, 781 y 794-795.

[12] Véase, Declaración Jurada de la señora Cuebas y transcripciones de las deposiciones de los apelados, Apéndice del Recurso AC-2015-103, págs. 353, 415, 729 y 794-795.

[13] Véase, Transcripciones de las deposiciones de los apelados, Apéndice del Recurso AC-2015-103, págs. 415-416 y 794-795.

[14] Véase, Declaración Jurada de la señora Cuebas y transcripción de la deposición del apelado Víctor Roldán, Apéndice del Recurso AC-2015-103, págs. 353, 416 y 729.

[15] Véase, Transcripción de la deposición del apelado Ángel L. Soto, Apéndice del Recurso AC-2015-103, págs. 792-793.

[16] Véase, *Asset Purchase Agreement* y Declaración Jurada de la señora Cuebas, Apéndice del Recurso AC-2015-103, págs. 351-354, 362-404, 727-730 y 738-780.

[17] Véase, *Asset Purchase Agreement* y Declaración Jurada de la señora Cuebas, Apéndice del Recurso AC-2015-103, págs. 351-354, 362-404, 727-730 y 738-780.

los empleados de M. Cuebas como parte de la compraventa de activos.[18] Tampoco adquirió la planta ni el nombre de M. Cuebas.[19]

Para el mes de agosto de 2011, M. Cuebas ya no elaboraba productos en su empresa.[20] Por otro lado, en octubre de 2011, M. Cuebas concluyó el despido de todos sus empleados.[21] Según admitido por los mismos apelados, "M. Cuebas despidió a sus empleados".[22] El apelado Roldán presenció todas las rondas de despido de los demás empleados y finalmente fue despedido el 6 de octubre de 2011.[23]

Por último, M. Cuebas asumió exclusivamente todo el proceso del cierre de operaciones, incluyendo la venta a terceros de sus activos, el cobro de las cuentas, el pago de

---

[18] Véase, *Asset Purchase Agreement*, Declaración Jurada de la señora Cuebas y oposiciones a las solicitudes de Sentencia Sumaria presentadas por los apelados, Apéndice del Recurso AC-2015-103, págs. 353, 362-404, 481, 486-487, 729, 738-780 y 891-892.

[19] Véase, *Asset Purchase Agreement*, Declaración Jurada de la señora Cuebas y oposiciones a las solicitudes de Sentencia Sumaria presentadas por los apelados, Apéndice del Recurso AC-2015-103, págs. 353, 362-404, 535-729, 738-780 y 891.

[20] Véase, Declaración Jurada de la señora Cuebas, transcripción de la deposición del apelado Roldán y oposición a la solicitud de Sentencia Sumaria presentada por dicho apelado, Apéndice del Recurso AC-2015-103, págs. 353, 416-419, 481 y 729.

[21] Véase, Declaración Jurada de la señora Cuebas y transcripción de la deposición del apelado Roldán, Apéndice del Recurso AC-2015-103, págs. 353, 416-419 y 729.

[22] Véase, Oposiciones a las Sentencias Sumarias presentadas por los apelados, Apéndice del Recurso AC-2015-103, págs. 487 y 891.

[23] Véase, Transcripción de la deposición del apelado Roldán y oposición a la Sentencia Sumaria presentada por dicho apelado, Apéndice del Recurso AC-2015-103, págs. 416-417 y 480.

sus deudas y la liquidación de los haberes de sus empleados, incluyendo la de los apelados.[24]

En fin, de los hechos incontrovertidos esbozados surge claramente que M. Cuebas cerró sus operaciones y que, como parte de su decisión inequívoca de cerrar, vendió **ciertos** activos a Bohío. M. Cuebas no se mantuvo "operando de forma continua" ni tenía "la expectativa de seguir funcionando indefinidamente". *Adventist Health v. Mercado*, supra; Black's Law Dictionary, *op. cit*. Por tanto, no hubo un traspaso de negocio en marcha.

C.

De los hechos incontrovertidos también se desprende que los despidos de los apelados fueron a causa del referido cierre de operaciones, por lo que fueron justificados. Véase, Artículo 2 de la Ley Núm. 80, *supra*. En ese sentido, M. Cuebas logró probar que no cometió alguna actuación ilegal por la que tenga que responder Bohío. Por tanto y según la norma esbozada previamente, el análisis sobre la aplicación de la Doctrina de Patrono Sucesor en el presente caso resulta innecesario. *Shaffer v. Mitchell Transport, Inc.,* supra*; Howard Johnson Co. Inc. v. Detroit Local Joint Executive Bd.,* supra*.

---

[24] Véase, Declaración Jurada de la señora Cuebas, transcripciones de las deposiciones de los apelados y oposición a la Sentencia Sumaria presentada por el apelado Roldán, Apéndice del Recurso AC-2015-103, págs. 352-353, 424-425, 728-729 y 813.

IV

Por todo lo expuesto, revocamos la Sentencia del Tribunal de Apelaciones, por entender que de los hechos debidamente probados por los apelantes surge que M. Cuebas cerró sus operaciones, por lo que los despidos de los apelados fueron justificados, y que son inaplicables las figuras de traspaso de negocio en marcha y la de patrono sucesor. De conformidad, reinstalamos las Sentencias Sumarias emitidas por el Tribunal de Primera Instancia, mediante las que se desestimaron las Querellas de los apelados.

Se dictará Sentencia de conformidad.


                                    Mildred G. Pabón Charneco
                                         Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Víctor Roldán Flores<br><br>    Apelado<br><br>       v.<br><br>M. Cuebas, Inc.; Bohío<br>International Corporation<br><br>    Apelantes<br><br>-----------------------------<br><br>Ángel L. Soto Lambert<br><br>    Apelado<br><br>       v.<br><br>M. Cuebas, Inc.; Bohío<br>International Corporation<br><br>    Apelantes | AC-2015-0103<br><br>Cons.<br><br>AC-2015-0105 |

SENTENCIA

En San Juan, Puerto Rico, a 6 de febrero de 2018.

Por todo lo expuesto, revocamos la Sentencia del Tribunal de Apelaciones. Entendemos que de los hechos debidamente probados por los apelantes surge que M. Cuebas cerró sus operaciones, por lo que los despidos de los apelados fueron justificados, y que son inaplicables las figuras de traspaso de negocio en marcha y la de patrono sucesor. De conformidad, reinstalamos las Sentencias Sumarias emitidas por el Tribunal de Primera Instancia, mediante las que se desestimaron las Querellas de los apelados.

Lo acordó y manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez disiente y hace constar la siguiente expresión:

Disiento del proceder mayoritario y me reitero en las expresiones que hice en Meléndez González et al. v. M. Cuebas, Inc. et al., 193 DPR 100 (2015);

particularmente, estoy en desacuerdo con extender los requerimientos de la Regla 36.4 de Procedimiento Civil al Tribunal de Apelaciones.

La Juez Asociada señora Rodríguez Rodríguez disiente con la siguiente expresión:

"La Juez Asociada señora Rodríguez Rodríguez disiente del curso de acción en este caso, fundamentalmente, por los fundamentos expresados en mi disenso en *Meléndez González* v. *M. Cuebas*, 193 DPR 100 (2015). Pero, además, como lo que comienza mal, acaba mal, considero equivocado la línea lógica de la ponencia que se certifica. Según ésta: si el negocio cierra totalmente, no hay responsabilidad bajo la Ley Núm. 80 y si no hay responsabilidad del dueño anterior de los activos bajo este estatuto, no hay necesidad de hablar de patrono sucesor. Esa conclusión es errónea. En muchos casos la venta de activos a otra corporación supondría el cierre total de las operaciones del patrono anterior, pero si la venta equivale a sustancialmente todos los activos del patrono anterior, no cabe duda de que debería aplicar la doctrina de patrono sucesor."

El Juez Asociado señor Estrella Martínez disiente con la siguiente expresión:

"Disiento con el dictamen contenido en la Opinión mayoritaria por los fundamentos expuestos en mi Voto particular disidente emitido en Meléndez González *et al.* v. M. Cuebas., 193 DPR 100, 131-147 (2015)."

El Juez Asociado señor Colón Pérez disiente sin opinión escrita.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo